**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **MEGAN M. CONTRERAS,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **COMMISSIONER OF SOCIAL SECURITY,** ***sued as Frank Bisignano, Commissioner of the Social Security Administration*****,** <br><br> **Defendant.** | ) | **CAUSE NO. 1:25-cv-00526-ALT** |

**OPINION AND ORDER**

Plaintiff Megan M. Contreras appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). Having now considered the parties' arguments and the evidence of record, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Contreras applied for DIB and SSI in June 2023, alleging disability as of May 9, 2023. (ECF 14 Administrative Record ("AR") at 2046-53).[1] Contreras's claim was denied initially and upon reconsideration. (AR 1857, 1867, 1877-78). On March 18, 2025, administrative law judge (ALJ) Terry Miller conducted an administrative hearing, at which Contreras, who was represented by counsel, and a vocational expert testified. (AR 51-84). On April 24, 2025, the ALJ issued Contreras an unfavorable decision, finding that she was not disabled because she could

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

perform a significant number of light-exertional jobs in the national economy despite the limitations caused by her impairments. (AR 28-42). The Appeals Council denied Contreras's request for review (AR 7-10), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On September 26, 2025, Contreras filed a complaint with this Court appealing the Commissioner's decision. (ECF 1). Contreras argues that the ALJ erred: (1) by failing to build a logical bridge from the evidence of her urinary limitations and time off task to the assigned residual functional capacity assessment (RFC); and (2) when assessing the medical opinions of record. (ECF 21 at 6).

On the date of the Commissioner's final decision, Conteras was thirty-seven years old (AR 2046), had a ninth-grade education with special education (AR 2116), and had past relevant work experience as a painter and fast-food crew member (AR 78-79). In her opening brief, Contreras alleges disability due to: major depressive disorder, anxiety, attention deficient hyperactivity disorder (ADHD), chronic pain syndrome, fibromyalgia, lumbar spondylosis, connective tissue and disc stenosis of intervertebral foramina of lumbar region, obsessive-compulsive disorder (OCD), bilateral carpel tunnel syndrome, intervertebral disc stenosis of neural canal lumbar region, and persistent urothelial thickening with persistent hydronephrosis. (ECF 21 at 5-6).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### *A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy. *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.[3] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *See Clifford*, 227 F.3d at 868.

### *B. The Commissioner's Final Decision*

At step one of the five-step sequential analysis, the ALJ found that although Contreras's earning history reflected wages after her alleged onset date of May 9, 2023, such amounts earned did not rise to the level of substantial gainful activity. (AR 30). At step two, the ALJ found that Contreras had the following severe impairments: chronic bilateral low back pain without sciatica, lumbar spondylosis/stenosis/facet arthropathy, fibromyalgia, joint pain, bilateral carpal tunnel syndrome, moderate depression, anxiety, ADHD, and OCD. (AR 31).

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(e), 416.920(e).

At step three, the ALJ concluded that Contreras did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). The ALJ assigned Contreras the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except standing/walking, in combination, is limited to only 4 hours in an eight-hour workday; only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climb ladders, ropes, or scaffolds; only frequent bilateral handling and fingering. Mentally, the claimant is limited to understanding, carrying out, and remembering detailed but not complex instructions, with the ability to sustain those tasks throughout the eight-hour workday without frequent redirection to task; should not work in an environment that is stringently production or quota based, and thus may not perform fast-paced assembly-line type of work, but can meet production requirements that allow her to sustain a flexible and goal oriented pace; and only occasional interactions with others, including supervisors, coworkers, and the general public, meaning that successful performance of job duties involves primarily working with things or objects and not people, although incidental interactions with others or incidental proximity to others is tolerated, but contact with supervisors allows the supervisors to give job instructions, job training and set job goals.

(AR 34-35).

The ALJ determined at step four that given the foregoing RFC, Contreras was incapable of performing her past relevant work. (AR 41). However, at step five, the ALJ found that a hypothetical individual of Contreras's age, education, experience, and RFC could perform a significant number of light-exertional jobs in the national economy, including inspector/hand packager; office helper; and assembler, electronic accessories. (AR 42). Accordingly, Contreras's applications for DIB and SSI were denied. (*Id.*).

*C. Urinary Limitations*

1. <u>Relevant Medical Evidence</u>

In September 2022, Contreras saw Chrisopher Frazier, M.D., her primary care provider, for a routine gynecological exam. (AR 2511-15). She reported a one-week history of urinary

frequency without burning and chronic back pain. (*Id.*).

In January 2023, Contreras visited a walk-in clinic for back pain, sore throat, and urinary frequency. (AR 2737). She reported a history of frequent urination and difficulty urinating. (*Id.*). She was diagnosed with a urinary tract infection (UTI), chronic back pain, dysuria, and a yeast infection. (AR 2741). In May 2023, Conteras visited a walk-in clinic for a one-week history of urinary frequency and ear pain, both of which had been gradually worsening. (AR 2363). She was diagnosed with acute cystitis and prescribed medication. (AR 2367). In July 2023, Contreras presented to a walk-in clinic with recurrent urinary frequency and urgency. (AR 2486).

In September 2023, Contreras saw a urology nurse practitioner for complaints of asymptomatic, recurrent UTIs. (AR 2661). She reported that she has to void every hour. (*Id.*). Conteras returned in November 2023, reporting that she has to void every one to two hours during the day and one to three times at night. (AR 2650). The provider discussed overactive bladder versus interstitial cystitis, but Contreras declined to undergo testing at that visit. (AR 2652).

In January 2024, Contreras underwent a urogram CT, which revealed a "[t]hickened appearance of the urothelial lining in the renal pelvis and proximal ureter on the left with moderate hydronephrosis and atrophy of the underlying renal cortex suggesting a chronic process." (AR 2632). In June 2024, Contreras underwent an abdominal CT, which revealed "[p]ersistent urothelial thickening involving the left renal pelvis with persistent hydronephrosis[.]" (AR 2785).

In September 2024, Contreras saw Allison Gilroy, a physician's assistant (PA), for a "disability physical." (AR 2926). PA Gilroy noted Contreras's history of frequent UTIs and that she was positive for dysuria. (*Id.*). PA Gilroy, however, did not include any limitations relating to

urinary frequency in her medical source statement. (AR 2929).

1. Applicable Law

"An ALJ need not address every piece of evidence or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). Rather, an ALJ is "subject to only the most minimal of articulation requirements." *Id.* All that is required is that the ALJ "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow … a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Id.* (citations and internal quotation marks omitted). In shorthand terms, an ALJ "needs to provide a logical bridge from the evidence to his conclusion." *Id.* (citation and internal quotation marks omitted). Having said that, "[t]he ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (footnote omitted); *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's

apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citation omitted); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e).

2. Discussion

Contreras argues that the ALJ erred by failing to consider the evidence relating to her urinary issues "at all." (ECF 21 at 10). That argument is overzealous.

The ALJ considered Contreras's urinary issues at step two but found them non-severe, explaining that her "recurrent urinary tract infections characterized by increased urinary frequency" "reveal[ed] only slight abnormalities having such minimal effects that they would not be expected to interfere with the ability to work …." (AR 31). The ALJ further stated that all of Contreras's non-severe conditions "were controlled with medication or other therapies, required occasional monitoring, or they did not last for at least twelve months during the relevant period[,] … [and] did not contribute to any functional loss greater than what is already accounted for in the [RFC] finding …." (*Id.*). In doing so, the ALJ cited to the evidence of record pertaining to Contreras's non-severe impairments, including the records relating to her urinary problems. (*Id.* (citing "3F; 6F; 7F/13-15; 10F; 11F; 13F; 14F; 15F; 18F; 20F; 23F; 26F; 28F; 29F")). Therefore, the ALJ did not turn a blind eye to Contreras's urinary issues.

As explained earlier, an ALJ is "subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053. Here, the ALJ wrote enough to make it clear he considered the evidence of Contreras's urinary problems and to build a logical bridge from this evidence to the RFC. *Id*. "[A]n ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citation omitted). No medical source of record assigned Contreras limitations based on her complaints of frequent urination or urinary problems. *See, e.g.*, *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) ("No doctor who addressed Plaintiff's carpal tunnel syndrome ever deemed it a manipulative limitation."); *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [the claimant] offered no opinion from any doctor to set sitting limits … greater than those the ALJ set." (citation omitted)). In particular, Shayne Small, M.D., and J.V. Corcoran, M.D., two state agency physicians, reviewed Contreras's record in February and September 2024, respectively—including the evidence pertaining to Contreras's frequent urination and urinary issues—and concluded that she could perform a reduced range of light-exertional work. (AR 1869-86). These doctors included no specific limitations relating to Contreras's frequent urination and urinary issues.

"[A]s [the Seventh Circuit Court of Appeals] has underscored time and again, a claimant bears the burden of proving their disability." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (citations omitted); *see Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove the claim of disability." (citations omitted)). Contreras has not carried her burden of proving that her complaints of frequent urination and urinary problems are disabling.

*D. Medical Opinions*

Contreras next argues that the ALJ erred by cherry-picking evidence when considering the consultative and treating physicians' opinions and failed to build a logical bridge to his conclusion that the opinions were "unpersuasive." (ECF 21 at 11). ‼

1. Summary of the Relevant Medical Opinions

Contreras's primary care provider, Christopher Frazier, M.D., submitted several brief letters to the record. He opined in November 2023 that Contreras had chronic back pain related to lumbar arthropathy and spinal stenosis, which causes "severe pain with prolonged standing, climbing, squatting, walking and lifting." (AR 1860). In March 2024, Dr. Frazier wrote that due to Contreras's "emotional disability," he recommended she obtain an emotional support animal as part of her mental health plan. (AR 2763). In July 2024, Dr. Frazier opined that Contreras had anxiety, ADHD, and chronic pain related to fibromyalgia and lumbar spinal stenosis, and that she was "limited in standing, walking, crawling, and climbing over 30 minutes because of pain." (AR 2190).

Blake Weimer, a nurse practitioner (NP), performed a "disability physical" of Contreras in January 2024. (AR 2689-94). Contreras demonstrated 4/5 grip strength and 4/5 lower extremity strength. (AR 2693). She had reduced range of motion and an abnormal straight-leg raise, but her gait was stable without an assistive device. (AR 2686-88, 2693). She had normal fine motor skills and handling of objects on a sustained basis, but some difficulty with repetitive movement of her hands due to carpal tunnel syndrome. (AR 2693). NP Weimer opined that Contreras could sit for 20 minutes, stand for 10 minutes, walk for one block before experiencing debilitating back and leg pain, carry 20 pounds short distances, and lift 10 pounds overhead one time. (*Id.*).

In February 2024, Dr. Small, M.D., a state agency physician, reviewed Contreras's record (including NP Weimer's report) and concluded that she could lift and carry 10 pounds frequently and 20 pounds occasionally; stand or walk six hours in an eight-hour workday; sit for six hours in an eight-hours workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 1863-65). She had no manipulative limitations. (AR 1865). Dr. Small noted that NP Weimer's opinion contrasted with the other evidence of record, rendering it "less persuasive." (AR 1863).

As mentioned earlier, PA Gilroy performed a "disability physical" of Contreras in September 2024. (AR 2926-32). Contreras complained of a "dull … ache" in her legs, feet, arms, shoulders, and low back and stated that she feels better walking than sitting. (AR 2926). Her gait was sustainable without an assistive device. (*Id.*). She demonstrated 5/5 grip and extremity strength bilaterally, normal sensation, "[g]rossly normal" range of motion, and the ability to perform fine and gross movements on a sustained basis. (AR 2928-29). Straight-leg-raise tests were negative. (AR 2929). PA Gilroy opined:

> Based on physical exam findings, medical history and imaging/laboratory results, [Contreras] can sit for 30 minutes and stand for 30 minutes[;] … walk for ½ mile before leg pain[;] … has normal fine motor skills with normal handling of objects.… [S]he can carry twenty pounds short distances. [S]he can lift ten pounds over their head one time.

(*Id.*).

Later that same month, Dr. Corcoran, a state agency physician, reviewed Contreras's record (including NP Weimer's report, PA Gilroy's report, records from Parkview Pain Management, imaging results, urology records, and Dr. Frazier's letters) and assigned the same limitations as Dr. Small, except for adding no climbing ladders, ropes, or scaffolds. (AR 1884-86, 1895-97).

2. Applicable Law

"Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (collecting cases). That is, an ALJ may not "cherry-pick" the record by citing only the evidence that supports his outcome; rather, he must "consider[] the record fairly." *Lord v. Astrue*, No. 1:11-CV-00356, 2012 WL 4322742, at *12 (N.D. Ind. Sept. 19, 2012) (citing *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993)).

3. NP Weimer

The ALJ found NP Weimer's opinion "unpersuasive[,]" articulating that NP Weimer did not state "what clinical findings she relied on or how they support her functional assessment." (AR 38); *see* 20 C.F.R. §§ 404.1620c(c)(1), 416.920c(c)(1). The ALJ also found NP Weimer's limitations "inconsistent with [her] own clinical observations including normal gait and only slightly reduced motor function" and "inconsistent with the longitudinal medical evidence as it depicts greater limitations than is described by other clinicians including the state agency doctors and subsequent consultative examiner." (AR 38). The ALJ reasoned: "Given the modest clinical findings, it appears that the opinion is based almost entirely on the claimant's subjective reports which are not corroborated by the record generally." (*Id.*).

Contreras disputes the ALJ's reasoning in several respects, beginning with the ALJ's conclusion that NP Weimer's limitations were based on Contreras's subjective statements. (ECF 21 at 12). Contreras emphasizes that NP Weimer specifically stated the medical source statement was "[b]ased on physical exam findings, medical history, and imaging/laboratory results[.]" (*Id.*; *see* AR 2693). However, as the ALJ observed, NP Weimer did not actually identify specific

evidence in support of the limitations she opined. *See* 20 C.F.R. §§ 404.1520c, 416.920c (explaining that supportability and consistency are the most important factors when an ALJ considers the persuasiveness of a medical source opinion); *see, e.g., Smith v. Comm'r of Soc. Sec.*, No. 1:24-cv-00238-ALT, 2025 WL 2774829, at *6 (N.D. Ind. Sept. 30, 2025) (affirming the ALJ's discounting of a physician's opinion for failing to identify specific evidence in support of assigned limitations).

Contreras also challenges the ALJ's view that NP Weimer's limitations are inconsistent with her own exam findings, given the exam revealed weak grip strength, difficulty with repetitive use of her hands and wrists due to carpal tunnel syndrome, abnormal straight leg raise test, reduced range of motion, and 4/5 lower extremity strength. (ECF 21 at 12). But as the ALJ observed, there appears to be a disparity between the rather mild deficits NP Weimer noted in her exam and the extreme restrictions she assigned limiting Contreras to standing for just 10 minutes, sitting for just 20 minutes, and walking just one block. (AR 38).

Finally, Contreras disputes the ALJ's statement that NP Weimer's limitations are not consistent with the record or that of the subsequent consultative examiner, PA Gilroy, given that both PA Gilroy and Dr. Frazier opined that Contreras could stand or walk for 30 minutes. But NP Weimer opined that Contreras could stand just 10 minutes and walk one block, where PA Gilroy opined that Contreras could stand for 30 minutes and walk one-half mile. (*Compare* AR 1864-65, *with* AR 2929). Thus, the ALJ's observation of some inconsistency between NP Weimer's and PA Gilroy's opinions is not patently wrong. But even more significantly, Dr. Small and Dr. Corcoran opined that Contreras could stand or walk about six hours in an eight-hour workday (AR 1864, 1885), which is quite inconsistent with the extreme limitations assigned by NP Weimer. The ALJ found Dr. Small's and Dr. Corcoran's opinions "generally persuasive" given their "program

knowledge and specialization" and because their opinions "are supported by a narrative discussion of the medical evidence and their conclusions are largely consistent with the medical record including the largely modest clinical findings … including the consultative exam observations that the claimant had normal gait and was able to ambulate effectively with full, or near full, motor strength." (AR 38); *see Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (affirming the weight the ALJ applied to the state agency doctors' opinions where the ALJ explained these doctors saw much of the record, had program knowledge, and supported their opinions with explanation); 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (acknowledging that state agency doctors are "highly qualified and experts in Social Security disability evaluation").

The Court's "role is extremely limited. We are not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citation omitted). Here, the ALJ adequately explained his reasons for discounting NP Weimer's opinion, and his rationale is supported by substantial evidence of record. *See id.* (The Court must "affirm the ALJ's decision … if the decision is adequately supported." (citation omitted)). The Court will not accept Contreras's invitation to reweigh NP Weimer's opinion in the hope that it will come out in her favor this time. *See Gedatus*, 994 F.3d at 900.

4. PA Gilroy

The ALJ also discounted PA Gilroy's opinion, stating "[t]he report does not include supportive comments explaining what clinical findings the consultative examiner relied on to support her functional limitations" as required by 20 C.F.R. §§ 404.1520c and 416.920c. (AR 39). Contreras challenges the ALJ's reasoning for the same reason she challenged NP Weimer's opinion—that PA Gilroy states in her report the medical source statement was "[b]ased on

physical exam findings, medical history, and imaging/laboratory results[.]" (ECF 21 at 14; *see* AR 2929). But like NP Weimer, PA Gilroy did not actually identify specific evidence in support of the limitations she opined. *See* 20 C.F.R. §§ 404.1520c, 416.920c (supportability and consistency are the most important factors when an ALJ considers the persuasiveness of a medical source opinion). Contreras adds that PA Gilroy documented (at the outset of her report in the "Review of Systems" portion) that Contreras was "[p]ositive" for dysuria, arthralgias, and myalgias, which Contreras urges lends support to the limitations PA Gilroy assigned. (ECF 21 at 14; *see* AR 2927). But again, PA Gilroy did not specify *how* any specific findings support the assigned limitations. *See, e.g.*, *Smith*, 2025 WL 2774829, at *6. Therefore, like NP Weimer's opinion, Contreras's arguments challenging the ALJ's consideration of PA Gilroy's opinion do not merit a remand of the ALJ's decision.

5. Dr. Frazier

Next Contreras challenges the ALJ's assessment of Dr. Frazier's letters issued in November 2023, March 2024, and July 2024, which conveyed that Contreras had severe pain with prolonged standing, climbing, squatting, walking, and lifting due to her fibromyalgia and lumbar spinal stenosis; could only stand, walk, crawl, or climb for 30 minutes; and recommended that she obtain an emotional support animal as part of her mental health plan. (ECF 21 at 14-17; *see* AR 1860, 2190, 2763).

The ALJ penned a lengthy paragraph about Dr. Frazier's letters, stating:

> The record includes multiple letters from physician, Christopher Frazier, M.D., the claimant's primary care doctor regarding the claimant's ability to maintain gainful employment. (7F/4; 16F/2-3; 22F/4). According to the letters, which are dated between November 2023 and July 2024, the claimant's fibromyalgia and chronic back issues causes severe pain with prolonged standing, climbing, squatting, walking and lifting. Although Dr. Frazier does not include a functional assessment in his November 2023 and March 2024 letters, (7F/4; 16F/2-3), in the July 2024 letter he opines that the claimant "is limited in standing, walking,

> crawling, and climbing over 30 minutes because of pain." (22F/4). Dr. Frazier also states that the claimant's anxiety and depression affect social aspects of communicating and focus the workplace and that he recommends an emotional support animal as part of her treatment plan. The opinions are not persuasive as they are not backed by any objective clinical findings. Dr. Frasier does not provide any supportive comments or meaningful discussion of what medical evidence he relied on to support his conclusions. What is more, his opinions are not supported by his own clinical findings including annual exams that document normal strength, sensation, and reflexes throughout. (7F/11; 22F; 28F/15, 18). The opinion is also inconsistent with the medical record generally including the conservative nature of the claimant's treatment and the lack of clinical findings in the record that document significant functional deficits.

(AR 40).

Contreras first argues that the ALJ erred by failing to state how persuasive Dr. Frazier's opinions are. (ECF 21 at 15). But that argument is a nonstarter. The ALJ plainly stated he found Dr. Frazier's opinions "not persuasive[.]" (AR 40).

Contreras also disputes the ALJ's assertion that Dr. Frazier failed to provide any meaningful discussion of the medical evidence he relied on to support his conclusion. (ECF 21 at 15). Contreras emphasizes that Dr. Frazier's July 2024 letter states at the bottom that "[t]he requested records will accompany this letter." (AR 2190). Contreras then cites various notes of record documenting diagnoses, exam results, and pain medications and other treatment (only a portion of which are actually penned by Dr. Frazier), suggesting Dr. Frazier intended such records to lend support to his assigned limitations. (ECF 21 at 16-17 (citations omitted)). However, a more reasonable reading of Dr. Frazier's letter suggests that Dr. Frazier simply sent records that were requested by the letter addressee. In any event, the records do not alter the fact that Dr. Frazier failed to provide any meaningful discussion about the medical evidence he relied on to support the opinions in his letters. And as the ALJ noted, Dr. Frazier's own examinations often revealed rather unremarkable clinical findings. (*See* AR 40 (citing AR 2479, 2836-59, 3003, 3006)).

In the context of discussing Dr. Frazier's letters, Contreras takes issue with one aspect of the ALJ's discussion of her treatment history, contending that the ALJ incorrectly recited that she had not been referred for a surgical evaluation. (ECF 21 at 17). When summarizing Contreras's treatment history and daily activities, the ALJ stated:

> Aside from the largely modest clinical findings, the nature and type of treatment the claimant received is also inconsistent with the alleged severity of her pain symptoms. The treatments she received were mostly conservative, consisting of pain management with the use of non-narcotic medications, injections, TENS unit, over-the-counter medications, a back brace, and home exercise programs. (7F/34; 10F; 20F; 29F). What is more, records also suggest that these conservative treatments provided moderate symptom relief. In fact, a review of the record shows the claimant utilized the same treatment regimen for years with minimal changes in medications or dosage. (10F/5, 54, 75, 78; 20F/10). Although the claimant testified that she was referred for a surgical evaluation, *there is no evidence in the record documenting that she was referred for surgical evaluation*. The undersigned also observes that the claimant's daily activities are somewhat inconsistent with the degree of functional loss alleged by the claimant. Aside from taking care of her children, the claimant was also able to work intermittently during the pendency of her disability claim. Although her ability to briefly work and take care of children is not dispositive, it does suggest that she is not as physically limited by pain as alleged. Limiting the claimant to a reduced range of light work with postural maneuvers either precluded or reduced to an occasional basis is consistent with the evidence so as to reduces physical stressors that could exacerbate her back pain symptoms and to account [for] her range of motion deficits. Greater limitations are not warranted given the lack of significant clinical findings, the conservative nature of her treatments, apparent effectiveness of treatment, and her daily activities.

(AR 36-37 (emphasis added)).

Contreras's point is valid. When summarizing Contreras's treatment history, the ALJ did overlook a May 12, 2025, note by Nida Azia, D.O., of Parkview Pain Management, which stated that the plan from the previous visit on September 18, 2024, included "Referral to spine surgery." (AR 384). At the May 12th visit, Contreras told Dr. Azia that Lyrica was effective for nerve pain but Flexeril was not effective for muscle spasms, and she was "looking to get something stronger for pain …." (*Id.*). Dr. Azia

wrote that Contreras "had failed … physical therapy, NSAIDS, Tylenol, muscle relaxants, and neuropathic agents", referred her for an epidural steroid injection, and a "Re-Referral to spine surgery if no relief from epidural." (AR 281).

But Contreras fails to cite any evidence indicating that epidural injections after May 2025 were ineffective or that she was actually re-referred for a surgical evaluation.[2] *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 708 (7th Cir. 2010) (stating that the Court will not engage in a "truffle-hunting expedition" (citation omitted)). Given the lack of citation to such evidence, and that Dr. Corcoran reviewed Parkview Pain Management's records and still concluded Contreras could perform a reduced range of light work (*see* AR 1886-87), the Court finds the ALJ's oversight in failing to acknowledge Parkview Pain Management's documentation of a surgical referral was harmless error. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (finding that an ALJ's oversight in failing to consider a state agency physician's opinion was harmless error where it was predictable with great confidence that the ALJ would reach the same result on remand).

Also in the context of discussing Dr. Frazier's letters, Contreras contends the ALJ failed to consider "much of the mental health evidence" that would lend credence to Dr. Frazier's recommendation she obtain an emotional support animal. (ECF 21 at 15). She disputes the ALJ's statement that "the evidence suggests that psychotropic medications were largely effective in helping manage the claimant's mental health symptoms." (AR 37).

---

[2] Instead, Conteras cites a note summarizing the results of an injection given two years earlier in June 2023 that indicated an "epidural steroid injection provided 0% relief." (ECF 21 at 17 (citing AR 278)). But that same note reflects Contreras received several other diagnostic lumbar injections later in 2023 to 2024, some of which provided "80% relief". (AR 278).

In support of this argument, Contreras cites just two notes of record. First, she points to a December 2024 note signed by Dr. Frazier, stating that her anxiety and OCD were "notably not controlled[.]" (ECF 21 at 15 (citing AR 663)). But that snippet, taken in context, reads: "Anxiety and OCD are notably not controlled but hard to assess due to not taking lexapro regularly. She did feel that she was under better control when taking medications regularly." (AR 663). Contreras also cites a January 2025 emergency room note indicating that she had "paranoid behaviors" and was hearing things under her trailer. (*Id.* (citing AR 571)). But that provider stated Contreras's paranoia could be related to polysubstance abuse given that she admitted to using methamphetamine and alcohol. (AR 571). As such, neither of the records cited by Contreras lend much support to her argument, and it is not the Court's duty to scour the record hunting for evidence that might. *See Gross*, 619 F.3d at 708. As the ALJ explained, the mental RFC he assigned is adequately supported by the opinion of Kari Kennedy, Psy.D., a state agency psychologist, who reviewed the record in September 2024 and concluded that Contreras could understand, remember, and carry out detailed, but not complex, tasks; manage the stresses involved with detailed work-related tasks; and attend to tasks for sufficient period to complete them. (AR 37, 39, 1887).

In sum, it is the ALJ's duty to weigh the evidence and resolve conflicting medical evidence. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021. "Even if reasonable minds could differ on the weight the ALJ gave the medical evidence, [the Court] will not substitute [its] judgment for that of the ALJ's by reweighing the evidence." *Id.* (citation omitted). The ALJ adequately assessed the evidence of record and resolved conflicting medical opinions, and the Court will not accept Contreras's plea to reweigh the evidence at this juncture. The ALJ's decision will be affirmed

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Contreras.

SO ORDERED.

Entered this 16th day of November 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge